# In the United States Court of Federal Claims

No. 22-570
(Filed Under Seal: March 10, 2023)
Reissued: March 27, 2023[1]

|  |  |
|---|---|
| J.E. MCAMIS, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| TRADE WEST CONSTRUCTION, INC., | ) |
|  | ) |
| Defendant-Intervenor. | ) |
|  | ) |

*Paige B. Spratt*, Schwabe Williamson & Wyatt, Vancouver, WA, for plaintiff.

*Meen Geu Oh*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Jacob W. Scott*, Smith Currie & Hancock, LLP, Tysons, VA, for defendant-intervenor.

## OPINION AND ORDER

**SMITH, Senior Judge**

This case illustrates a fundamental conflict between the best government procurement for the effectiveness and efficiency of the government and the congressional support embodied in statutes specifically benefiting small businesses. Here, the United States Army Corps of Engineers, Portland District ("USACE" or "Agency") strongly believed plaintiff was the best contractor for the job while the Small Business Administration ("SBA") decided otherwise. Unfortunately for plaintiff, this Court has no jurisdiction to overrule SBA because Congress has allocated that decision to SBA rather than the Corps or this Court. It is the duty of a court to follow the law, not make it.

---

[1]  An unredacted version of this opinion was issued under seal on March 10, 2023. The parties were given an opportunity to propose redactions, but no such proposals were made.

Now this post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record.  Plaintiff, J.E. McAmis, Inc. ("McAmis"), challenges the Certificate of Competency ("COC") determination by SBA and the award decision issued by the Agency for repair of the Coos Bay Jetty in Charleston, Coos County, Oregon under Invitation for Bid No. W9127N21B0022 ("IFB" or "Solicitation").  Plaintiff challenges the Agency's award to defendant-intervenor, Trade West Construction, Inc. ("Trade West"), arguing, *inter alia*, that the Agency erred in its responsibility determination of Trade West and subsequent referral to SBA; that Trade West used the COC process to change the terms of the Solicitation; and that SBA failed to follow the Solicitation's responsibility criteria.  *See generally* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 27 [hereinafter Pl.'s MJAR].  In response, defendant and defendant-intervenor contend, *inter alia*, that plaintiff conflates the responsibility standards with responsiveness; that Trade West is not attempting to change the terms of the Solicitation—rather it is defending SBA's responsibility determination; and that plaintiff's claims against SBA are without merit.  *See generally* Defendant's Motion to Dismiss, Response in Opposition to Plaintiff's Motion for Judgment on the Administrative Record, and Cross-Motion for Judgment on the Administrative Record, ECF No. 35 [hereinafter Def.'s CMJAR]; Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 37 [hereinafter Def.-Int.'s CMJAR].  For the reasons set forth below, the Court grants defendant's Motion to Dismiss, denies plaintiff's Motion for Judgment on the Administrative Record, and grants defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record.

## I.      Background

The USACE, Northwestern Division, Portland District, is responsible for the repair of the Coos Bay North Jetty located on the southern end of the Coos Bay North Spit, on the south-central Oregon coast near Charleston, Coos County, Oregon.  Administrative Record 9–10 [hereinafter AR].  Originally completed in 1931, the North Jetty has since sustained damage over time, losing "approximately 370 feet from its last repaired head station of 86+40" with a deteriorated and de-stabilized jetty head.  AR 10.  Additionally, the trunk and root of the North Jetty have become "more vulnerable to damage" due to crest elevation.  AR 10.  As a result, the Agency set about procuring the necessary services to repair the Coos Bay North Jetty.  *See* AR 7–14.

### A.      The Solicitation

On March 10, 2021, the Agency issued a Sources Sought Notice to conduct market research and gain necessary information from potential bidders.  *See* AR 9.  In response to the Sources Sought Notice, the Agency received responses from four bidders—plaintiff being one of those bidders.  AR 17 (Market Research Report).  The Agency reviewed all responses and concluded that plaintiff was the only capable small business to respond to the Notice.  AR 19.  Hence, the Agency determined that it did not have a "reasonable expectation of receiving at least two bids at fair and reasonable prices from responsible small businesses."  AR 19.

As a result, on July 28, 2021, the Agency issued the IFB for the Coos Bay North Jetty Repair Project using unrestricted, full and open competition.  AR 21, 65.  The IFB contemplated award of a firm, fixed-price contract.  AR 70–81, 89.  The IFB provided special instructions regarding responsibility in accordance with "special standards of responsibility" under Federal Acquisition Regulation ("FAR") 9.104-2, which required the following from each bidder:

> To be found responsible, a bidder must provide information demonstrating that the bidder has completed one jetty OR breakwater OR heavy marine construction project on the **western coast** of the United States with a **total contract value greater than $15M performed within the last 15 years** and that required procurement, delivery, AND placement of **individual stones weighing at least 25 tons**. If a bidder cannot or does not provide this information meeting the minimum standards, it will be determined nonresponsible and ineligible for award.

AR 83 (emphasis added).  The Solicitation instructed bidders to submit inquiries regarding this procurement through the web-based program ProjNet-Bid.  AR 83.

After the Solicitation was released, bidders submitted various questions and requests for clarification on ProjNet-Bid.  AR 772–75.  One such question, asked from a prospective bidder on July 29, 2021, inquired whether the Agency would consider waiving the "western coast" requirement within the special standards of responsibility.  AR 772.  On August 4, 2021, Trade West submitted a similar inquiry regarding the "western coast," and Trade West asked whether the Agency would lower the $15M total contract value requirement and the stone weight requirement from 25 tons to 22 tons.  *See* AR 772–73.

That same day, the Agency responded to inquiries by issuing Amendment 0001: replacing the "western coast" requirement with "pacific shore" including Alaska.  AR 620 (Amendment 0001).  The Agency, however, chose not to lower the $15M total contract value requirement but did agree to lower the stone weight from 25 tons to 22 tons.  *See* AR 773 (ProjNet Bid Inquiry Contractor Report) (stating "[w]e would agree to lower the stone weight from 25 tons to 22 tons").

On August 25, 2021, Trade West filed a pre-award bid protest with the Agency regarding the responsibility criteria, stating that it was "unduly restrictive," thereby limiting competition. *See* AR 801–05.  On September 9, 2021, the Agency denied Trade West's protest stating that the special responsibility criteria "applies to all offerors" and "ensure[s] that the contractor will be able to satisfy the requirements of the Coos Bay North Jetty Repair project."  AR 818.

On September 1, 2021, bidding closed with two submissions: McAmis and Trade West. *See generally* AR 820, 857.  Trade West submitted the lowest of the two bids—an estimated $67,710,750.00, in comparison to McAmis's bid of $68,035,450.00.  AR 881.  That same day, the Agency went to Trade West and asked for confirmation of their adherence to the special responsibility criteria in the Solicitation.  *See* AR 900.  On September 2, 2021, Trade West responded that it "substantially complies with the experience requirement" to perform the work, further providing past performance information through Contractor Performance Assessment Reporting System ("CPARS") ratings for USACE breakwater projects in the past 15 years

totaling over $15M in combination.  *See* AR 901.  Trade West argued that its performance in the Atlantic Ocean and Great Lakes should be considered "due to the similar wave and weather conditions."  AR 902.  As to stone weight, Trade West argued that the Solicitation's stone tonnage requirement of "at least 25 tons" is not appropriate because many contracts only pay for stones up to 22 tons.  AR 902.  Trade West noted that the Agency said that it would lower the weight requirement, but it had yet to issue an amendment or provision to that effect.  AR 901.

### B.     Nonresponsibility Determination and the Small Business Administration

On September 3, 2021, the Agency deemed Trade West's bid nonresponsible for failure to meet the special responsibility criteria in the Solicitation.  AR 927–28.  Specifically, the Agency articulated its concerns with Trade West as follows:

> The information provided by Trade West demonstrated that Trade West has completed one jetty, breakwater, or heavy marine construction project on the Pacific shore of the United States, the Quillayute Rialto Revetment Repair, which Trade West completed in February 2018. All other projects submitted by Trade West were not performed on the Pacific shore. The Quillayute Rialto Revetment Repair project did not require procurement, delivery, and placement of individual stones weighing at least 22 tons. Rather, it required procurement, delivery, and placement of individual stones weighing up to 14 tons, though Trade West represented that it procured, delivered, and placed stones weighing up to 23 tons, notwithstanding the contract requirements. Furthermore, the Quillayute Rialto Revetment Repair contract had a value of only $2.69M.

AR 927.  The Agency concluded that Trade West could not meet the definitive responsibility criteria and was therefore ineligible for award.  AR 928.

That same day, the Agency submitted a COC referral package to SBA, including documentation and information, using an SBA Checklist.  AR 929–31.  On September 7, 2021, SBA contacted Trade West to inform them of the COC referral and their choice to apply for a COC determination.  AR 1532–33.  That same day and on September 11, 2021, Trade West submitted its COC application with documents to aid SBA in its review: financial information, comparable projects, and CPARS project ratings (i.e., performance reviews submitted by government agencies on previous work).  AR 1571–3468.  On September 14, 2021, Trade West submitted additional documents to SBA, pictures showing previous experience with stones weighing over 22 tons.  AR 3544–603.

On September 22, 2021, the Agency submitted documents to support its nonresponsibility determination.  AR 3628–33.  In these documents, the Agency explained that the Contracting Officer ("CO"), in conjunction with the appropriate specialists, identified special standards of responsibility which went beyond general standards of responsibility under FAR 9.104-1 "due to the challenging and unique nature of the requirement."  AR 3630.  The Agency stated that the project was of "substantial magnitude" in unique working conditions with consideration of tides, range of wave heights, and range or wave grouping effects.  AR 3630. According to the Agency, these elements create hazardous working conditions where knowledge and experience in these conditions contribute to the quality and safety of the jetty repair.  AR

3630.  Finally, the Agency commented that, should SBA find Trade West responsible by issuing a COC, "SBA would be substituting its own judgment for that of [the] agency experts as to what constitute[s] appropriate special standards of responsibility under FAR 9.104-2 for this procurement."  AR 3632.

On September 24, 2021, SBA wrote to SBA's COC Review Board Committee ("SBA Board") requesting an initial review of its recommendation to grant a COC to Trade West.  AR 3637–56; *see also* 13 C.F.R. § 125.5(g), (j) (procurements exceeding $25 million require review by the Small Business Administration Headquarters).  SBA stated that the Agency did not provide new or supplemental information supporting its determination of nonresponsibility or Trade West's "lack of capacity to perform work similar in nature, complexity, or challenges to the Coos Bay North Jetty Repair Project."  AR 3656.  SBA concluded that Trade West's COC application addressed and overcame the Agency's noted deficiencies and "demonstrated the technical experience, capacity, capability, financial resources, quality assurance and operational wherewithal to perform the Coos Bay jetty repairs."  AR 3656.

On September 30, 2021, the SBA Board reviewed the applicable materials and recommended to SBA Headquarters ("HQ") that a COC be issued to Trade West.  AR 3756; *see also* 13 C.F.R. § 125.5(j).  On October 5, 2021, SBA's Director of Government Contracting approved the SBA Board's recommendation.  AR  3782.  That same day, SBA informed the Agency of its decision to issue a COC to Trade West, stating that its decision is "conclusive with respect to all elements of responsibility and [Trade West] is not required to meet any other requirements of responsibility."  AR 3789.  The Agency contested SBA's COC issuance and thereafter, the agencies coordinated further discussions before SBA finalized its decision.  *See* AR 3802–21; *see also* AR 3826–29.

The Agency was allowed to bring forth additional information to SBA to support their position of Trade West's nonresponsibility—to which SBA responded to each individual concern.  AR 3826–29.  On October 19, 2021, Trade West submitted a copy of the ProjNet-bid records to SBA (i.e., questions posed by interested bidders prior to award).  AR 774.  On October 22, 2021, the Agency provided SBA supplemental information, reiterating its position that Trade West should be deemed nonresponsible because Trade West did not meet the definitive responsibility criteria—criteria which the Agency emphasized was necessary due to the challenging work conditions on the Pacific Northwest coast.  *See* AR 3831–43.

On October 28, 2021, SBA's Director of Government Contracting informed the Agency that it investigated the definitive responsibility criteria in the Solicitation and determined Trade West responsible.  AR 3847–48.  The SBA Director stated that the Agency was "required to award the contract . . . to the certified concern without requiring it to meet any other requirement of responsibility or eligibility."  AR 3847.  Finally, the SBA Director provided the Agency with a summary of its findings and awarded the COC.  AR 3849–53.

### C.    Procedural History

On November 4, 2021, McAmis filed an agency-level protest regarding Trade West's small business size-status.  AR 3854–4378.  On November 16, 2021, SBA denied McAmis's size protest for being untimely.  AR 4380–84, 4402–04.  That same day, the Agency submitted a

small business size protest.  AR 4390 (stating that the Contracting Officer, "whether timely or not," can file a size protest to SBA).  AR 4390.  On December 6, 2021, SBA denied the Agency's protest.  AR 4396–4401.  Thereafter, McAmis appealed SBA's denial.  AR 4402–04.  On December 14, 2021, the SBA Office of Hearing and Appeals denied McAmis's appeal.  AR 4402–04.  On February 2, 2022, the Agency awarded the contract to Trade West.  AR 4449–50.

On February 9, 2022, McAmis filed a protest with the Government Accountability Office ("GAO"), challenging the Agency's award decision.  AR 4984–96.  On May 18, 2022, the GAO denied McAmis's protest, concluding that (1) the special standards of responsibility are a "matter of responsibility," not responsiveness; (2) bidders may provide responsibility information "any time prior to contract award"; (3) McAmis has not established that the Agency's submission of documents to SBA was inaccurate, incomplete, or misleading; and (4) the record does not support that SBA failed to follow its own regulations when it issued Trade West's COC.  AR 6558–63.  Additionally, GAO stated that to the extent that McAmis is protesting the merits of SBA's decision to issue the COC, "such is not for consideration by our Office."  AR 6562–63, 6561 (explaining that GAO "do[es] not review challenges to the SBA's decision whether to issue a COC unless there is a showing that the COC issuance or denial resulted from (1) possible bad faith on the part of government officials, (2) SBA failing to follow its own published regulations, or (3) SBA failing to consider vital information because of how the information was presented to, or withheld from, the SBA by the procuring agency.").

On May 24, 2022, McAmis filed its Complaint with this Court.  *See generally* Complaint, ECF No. 1 [hereinafter Compl.].  On July 5, 2022, plaintiff filed its Motion for Judgment on the Administrative Record.  *See generally* Pl.'s MJAR.  On July 22, 2022, defendant filed a Motion to Dismiss, its Response to plaintiff's Motion, and its Cross-Motion for Judgment on the Administrative Record.  *See generally* Def.'s CMJAR.  That same day, defendant-intervenor filed its Response to plaintiff's Motion and its Cross-Motion for Judgment on the Administrative Record.  *See generally* Def.-Int.'s CMJAR.  On August 5, 2022, plaintiff filed its Reply and Response to defendant's and defendant-intervenor's cross-motions for judgment on the Administrative Record.  *See generally* Plaintiff's Response to Defendants' Cross-Motions for Judgment on the Administrative Record and Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 43 [hereinafter Pl.'s Resp.].  On August 12, 2022, defendant and defendant-intervenor filed their respective Replies.  *See generally* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 45; Defendant-Intervenor's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 47.  The Court held oral argument on September 6, 2022.  The parties' Motions are fully briefed and ripe for review.

## II.    Standard of Review

### A.  Motion to Dismiss under Rule 12(b)(1)

To survive a motion to dismiss for lack of subject-matter jurisdiction, under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), a complaint must "allege sufficient facts to establish the court's jurisdiction."  *Melwood Horticultural Training Ctr., Inc. v. United States*, 151 Fed. Cl. 297, 305 (citing *DaimlerChrysler Corp. v. United States*,

442 F.3d 1313, 1318–19 (Fed. Cir. 2006)).  The plaintiff has the burden of proof to demonstrate by a preponderance of the evidence that this Court has subject matter jurisdiction.  *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  The Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration*, 659 F.3d at 1163.  If the Court determines that it does not have subject-matter jurisdiction, at any time, it must dismiss the action in accordance with RCFC 12(h)(3).  *See* R. Ct. Fed. Cl. 12(h)(3).

### B.  Motion for Judgment on the Administrative Record under Rule 52.1(c)

This Court's jurisdictional grant is found primarily in the Tucker Act, which affords this Court with jurisdiction over bid protest actions.  28 U.S.C. § 1491(b).  This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions.  *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706(2)(A)); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Under APA standards, agency procurement actions may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706 (incorporated in 28 U.S.C. § 1491(b)(4)).

In other words, "a bid protest may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332.  Under the rational basis ground, the Court recognizes that "contracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Id.* (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)).  The test for courts is whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," where the protester has a "heavy burden" to show that the award decision has no rational basis. *Impresa*, 238 F.3d at 1332–33 (internal citation omitted).

When a challenge is brought on the second ground, the protestor must show that the alleged violation was a "clear and prejudicial violation of applicable statutes or regulations." *Id.* at 1333 (internal citations omitted).  Therefore, if the agency's procurement decision lacked a rational basis or is contrary to law, the court will then "determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum*, 404 F. 3d at 1351; *see also Sys. Stud. & Simulation v. United States*, 22 F.4th 994, 996–98 (Fed. Cir. 2021).

The Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983)).  "If the court finds a reasonable basis for [an] agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (internal citation omitted).  The Court will not substitute its judgment for that of

the agency.  *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

Pursuant to RCFC 52.1, a party may file a motion for judgment on the administrative record requesting the Court to assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review.  *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (internal citations omitted).  On such a motion, the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record.  R. Ct. Fed. Cl. 52.1; *Bannum, Inc.*, 404 F.3d at 1354.  The Court will then determine whether a party has met its burden of proof based on the evidence in the record.  *Bannum*, 404 F.3d at 1355.

## III.   Discussion

As stated above, defendant filed a Motion to Dismiss under RCFC 12(b)(1) and a Cross-Motion for Judgment on the Administrative Record under RCFC 52.1(c).  *See generally* Def.'s CMJAR.  This Court will first address the jurisdictional challenge before proceeding to the remainder of plaintiff's allegations, which are reviewed under the APA standard of review for agency actions.  *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706(2)(A)).

### A.   Jurisdiction and SBA's Issuance of the COC

Defendant moves to dismiss Count IV of plaintiff's Complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction.  *See* Def.'s CMJAR at 15–17.  Plaintiff's Complaint alleges that SBA is "obligat[ed] to evaluate responsibility criteria in accordance with the requirements of the solicitation and applicable regulations, including the FAR" and that under 48 C.F.R. § 9.104-2(a), this criterion "appl[ied] to all offerors."  Compl. at 11.  Plaintiff argues that because SBA determined Trade West responsible, after the Agency determined that Trade West did not meet the Solicitation's definitive responsibility criteria, SBA's determination "ignore[ed] the specific, objective requirements provided by the Solicitation."  *Id.*

In response, defendant argues that this Court lacks jurisdiction to review challenges to SBA's issuance of a COC, including whether a small business is sufficiently responsible to perform under the contract.  *See* Def.'s CMJAR at 15–17 (citing *Sonoran Tech. & Prof'l Serv., LLC v. United States*, 133 Fed. Cl. 401 (2017)).  Defendant states that SBA's determination of granting a COC is "'conclusive with respect to all elements of responsibility of prospective small business contractors,' and 'the SBA's issuance of a COC is not reviewable.'"  *Id.* (citing *Sonoran*, 133 Fed. Cl. at 403).  Defendant-intervenor argues much the same but adds that plaintiff is asserting jurisdiction under 4 C.F.R. § 21.5, a regulation applicable to GAO—not this Court.  *See* Def.-Int.'s CMJAR at 19–20; *see also* Pl.'s MJAR at 15.  The Court is inclined to agree with defendant and defendant-intervenor.

The issue is whether this Court has jurisdiction to review SBA's issuance of a COC.  The Small Business Act, which outlines the power conferred from Congress to SBA, states that SBA is "empowered" and has the "duty" to certify and issue a "final disposition" to Government

procurement officers on "all elements of responsibility."  15 U.S.C. § 637(b)(7)(A).  As to this notion of "final disposition," § 637(b)(7)(C) provides in relevant part:

> In any case in which a small business concern or group of such concerns has been certified by the Administration pursuant to (A) or (B) to be a responsible or eligible Government contractor as to a specific Government contract, **the officers of the Government having procurement or property disposal powers are directed to accept such certification as conclusive, and shall let such Government contract to such concern or group of concerns without requiring it to meet any other requirement of responsibility or eligibility**.

15 U.S.C. § 637(b)(7)(C) (emphasis added).

This Court analyzed this statute in *Related Industries, Inc. v. United States*, stating that the "final disposition to which the statute refers is only final with respect to a decision certifying a contractor to the procurement officer as responsible."  2 Cl. Ct. 517, 520 (1983).  In other words, SBA's power to make a "final disposition" as to a small business's responsibility is applicable when SBA is granting a COC—i.e., deeming a small business concern responsible.  *See Related Indus.*, 2 Cl. Ct. 517, 520 (1983); *see also Cavalier Clothes, Inc. v United States*, 810 F.2d 1108, 1111 (Fed. Cir. 1987) (holding that SBA is not "immunize[d] from judicial review the refusal to grant a COC," but if SBA issues the COC, "the certification of the small business concern as responsible is binding on the contracting officer.").

In terms of jurisdictional reach, the distinction between SBA granting or denying a COC was emphasized in *Sonoran*, where this Court "limited [its] holdings to decisions denying the issuance of a COC."  133 Fed. Cl. at 404 (recognizing a "meaningful difference between the SBA's decision to deny a COC and to issue a COC.").  Similar to *Sonoran*, this Court recently held that it is "important to distinguish between a protest brought by a small business concern that contests the refusal of the SBA to issue a COC" with "an attempt by a competitor to invalidate a COC issued by the SBA."  *See Cashman Dredging & Marine Constr. Co., LLC v. United States*, 148 Fed. Cl. 58, 63–64 (2020); *but see Lawson Envtl. Serv., LLC v. United States*, 126 Fed. Cl. 233 (2016).[2]  In short, the Federal Circuit, as well as this Court, has interpreted the Small Business Act as conferring power to SBA to make the final decision regarding responsibility; thus, this Court does not have jurisdiction to review SBA decisions which grant a COC.  Accordingly, defendant's motion to dismiss should be granted, and Count IV of plaintiff's Complaint under RCFC 12(b)(1) should be dismissed for lack of subject matter jurisdiction.

Finally, this Court notes that, until Congress provides otherwise, the unique circumstances of 15 U.S.C. § 637(b)(7)(C), and its preceding case law, create a judicial barrier in which plaintiffs cannot avail itself of the normal presumption in favor of judicial review.  *See*

---

[2] This Court has distinguished the holding in *Lawson* because the case "include[d] no substantive analysis of the court's bid protest jurisdiction over challenges to the SBA's issuance of a [Certificate of Competency]" with its "assertion of jurisdiction [] contained in one sentence."  *See Cashman Dredging & Marine Constr. Co., LLC v. United States*, 148 Fed. Cl. 58, 64 (2020) (discussing *Lawson Envtl. Serv., LLC v. United States*, 126 Fed. Cl. 233 (2016)).

*Precise Sys. v. United States*, 120 Fed. Cl. 586, 595 (2015) (internal citations omitted). However, as the statute and case law make clear, this Court need not go further.

**B.    Responsiveness versus Responsibility**

In its Motion for Judgment on the Administrative Record, plaintiff argues that the Agency "should have deemed Trade West's bid as nonresponsive and rejected its bid for failing to provide any information required by the special instructions." Pl.'s MJAR at 15. Plaintiff posits that the Agency's action "violated the express terms of the Solicitation," which required bidders to provide information requested in the "Special Instructions" with its written proposal. *Id.* at 15–16. In response, defendant argues that the solicitation does not require special standards of responsibility information to be included in a bidder's proposal, and plaintiff construes the special responsibility standards as a *responsiveness* requirement. *See* Def.'s CMJAR at 18–19 (stating that "the Corps did not specify *when* a bidder had to provide information regarding its responsibility . . . much less require that such information must 'be included in each bidder's 'written proposal.'" (emphasis in original)) (emphasis in original). Defendant-intervenor likewise argues that plaintiff's argument "suffers the fatal flaw of conflating responsiveness with responsibility." Def.-Int.'s CMJAR at 9.

Before award, the CO must make both a responsibility and a responsiveness determination. *See* 48 C.F.R. 9.103, 14.301. These determinations are different and are conducted separately prior to award. *See VMS Hotel Partners v. United States*, 30 Fed. Cl. 512, 514 (1994). Responsiveness, under FAR 14.301, is a review of the bidder's proposal to determine whether it "compl[ies] in all material respects with the invitation for bids" for the purpose of ensuring that bidders "stand on an equal footing and maintain the integrity of the sealed bidding system." The responsiveness determination is conducted at bid opening "based upon the contents of the bid." *See VMS Hotel Partners*, 30 Fed. Cl. at 514 (citing *Honeywell, Inc. v. United States*, 870 F.2d 644, 648–49 (Fed. Cir. 1989)). The CO's review consists of reviewing the Solicitation's requirements and determining "whether the bidder agrees in its bid to conform in all material respects to such requirements." *Id.*

Responsibility, under FAR 9.103, is a review of the bidder's "ability to satisfy its contractual commitments encompassed within its 'responsive bid.'" *Id.* Importantly, COs are not limited in their review to the bidder's proposal; a CO may seek additional information from the bidder to "demonstrate that the contractor is capable of performing the contract work." *Id.* at 514–15 (citing 48 C.F.R. § 9.105-1). In short, an important distinction between responsiveness and responsibility is the CO is confined to reviewing materials submitted with the bid, as well as available facts at bid opening, in determining responsiveness, but the Agency may request additional information from bidders regarding responsibility prior to contract award. *See VMS Hotel Partners*, 30 Fed. Cl. at 514–15.

Plaintiff argues that the Solicitation's "Special Instructions" require bidders to submit information—used to demonstrate responsibility—in its bid by the bid submission date, otherwise the Agency is required to find the bidder nonresponsive. Pl.'s MJAR at 16; AR 720. For context, the Solicitation states as follows:

- 10 -

In accordance with FAR 9.104-2, the Government is using special standards of responsibility for this procurement. To be found responsible, a bidder must provide information demonstrating that the bidder has completed one jetty OR breakwater OR heavy marine construction project on the pacific shore of the United States to include Alaska with a total contract value greater than $15M performed within the last 15 years and that required procurement, delivery, AND placement of individual stones weighing at least 25 tons. If a bidder cannot or does not provide this information meeting the minimum standards, it will be determined nonresponsible and ineligible for award.

AR 720 (Amendment 0005). The Solicitation's special "standards of responsibility" go directly toward the Agency's responsibility determination. This provision was written in view of FAR 9.104-2, a regulation that pertains to a contractor's responsibility, and for purposes of that determination, the Agency was seeking information regarding the bidder's "ability to satisfy its contractual commitments"—not necessarily whether the bidder's proposal conforms in all material respects to the Solicitation's requirements. *See VMS Hotel Partners*, 30 Fed. Cl. at 514 (citing *Honeywell, Inc. v. United States*, 870 F.2d 644, 648–49). As stated above, these are separate and distinct reviews completed by the Agency prior to award. *See id.*

Further, because this provision pertains to responsibility, the CO may seek additional information from Trade West to complete its responsibility determination prior to award. *See Dyncorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 547 (2007) (citing *Blount, Inc. v. United States*, 22 Cl. Ct. 221, 226–27 (1990)). In any event, the plain language of the Solicitation does not indicate an intention from the Agency to circumvent FAR 9.105-1(b)(3)—a regulation which allows the Agency to obtain information on financial resources and performance capability up to the date of award. *See* AR 720. In fact, the Solicitation's special standards of responsibility are silent regarding a "due date" for submissions of responsibility. *See* AR 720.

Therefore, the Court does not find that the Agency acted arbitrary or capriciously, nor did the Agency violate law when it did not eliminate Trade West from the competition for failing to demonstrate responsibility through its bid submission. The Agency may, and the record confirms that it did, attempt to assess the responsibility of a presumptive awardee in accordance with applicable regulations and law.[3] *See generally* AR 900–28; *see also Dyncorp*, 76 Fed. Cl. at 547 (citing *Blount*, 22 Cl. Ct. at 226–27).

## C.     The Agency's COC Referral

Plaintiff additionally argues that the Agency failed to provide "vital information to SBA in its referral." Pl.'s MJAR at 22. Specifically, plaintiff takes issue that the Agency did not provide the ProjNet-bid records—pre-bid questions and answers from potential bidders on the

---

[3] Plaintiff brings forth an argument concerning discussions which the Court need not address at length. Plaintiff argues that the Agency was not permitted to conduct discussions, under 48 C.F.R. § 52.214-19(a), but the Agency did so when it communicated with Trade West after the date of bid opening. Plaintiff's Motion for Judgment on the Administrative Record at 19 [hereinafter Pl.'s MJAR]. However, the record shows that the communication between the Agency and Trade West concerned the Agency's responsibility determination. *See* AR 900–28. As exchanges in the context of a responsibility determination do not constitute discussions, the Court need not go further as this argument has no merit. *See WaveLink*, *Inc. v. United States*, 154 Fed. Cl. 245, 270 (2021) (citing *DynCorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 546–47 (2007)).

ProjNet system.  *See id.* at 23.  Plaintiff argues that it was during this time that potential bidders asked the Agency to change the eligibility requirements, to which the Agency made clear that "it was not going to budge on the definitive responsibility criteria."  *Id.*  Plaintiff argues that if SBA were given these ProjNet-bid records, then SBA "could see and consider" that the awardee was "undermin[ing] the fairness and competition of a government procurement."  *Id.*

In response, defendant argues that the Agency is not required to provide SBA with every document related to the procurement.  *See* Def.'s CMJAR at 22.  Additionally, defendant argues that the Agency followed the governing regulation—which lists the required documents that the Agency must include in its COC referral.  *Id.*  Finally, defendant and defendant-intervenor argue that, regardless, SBA received the ProjNet bid inquiries prior to SBA rendering its COC decision.  *See* Def.'s CMJAR at 23 (citing AR 3822–25 (Trade West's submission of the ProjNet-bid inquiries to SBA)); *see also* Def.-Int.'s CMJAR at 17.

When an Agency determines that an apparent successful small business bidder lacks "certain elements of responsibility," the CO refers the matter to the appropriate SBA Contracting Area Office.  48 C.F.R. § 19.602-1(a)(2) (referrals are made to the Area office where the bidder's small business is headquartered in accordance with agency procedures).  The Agency's referral to SBA must include the following:

(1) A notice that a small business concern has been determined to be nonresponsible, specifying the elements of responsibility the contracting officer found lacking; and

(2) If applicable, a copy of the following:

    i.   Solicitation.
    ii.   Final offer submitted by the concern whose responsibility is at issue for the procurement.
    iii.   Abstract of bids or the contracting officer's price negotiation memorandum.
    iv.   Preaward survey.
    v.   Technical data package (including drawings, specifications and statement of work).
    vi.   Any other justification and documentation used to arrive at the nonresponsibility determination.

*See* 48 C.F.R. § 19.602-1(c).

Given the governing regulation, this Court is inclined to agree with defendant.  There is no requirement which obligates the Agency to provide the ProjNet-bid inquiries to SBA.  *See id.*  Plaintiff seems to interpret the ProjNet-bid inquiries as a document the Agency "used to arrive at [its] nonresponsibility determination."  *See* Pl.'s MJAR at 22 (stating that "[t]he contracting agency's referral to the SBA must include, among other documents, '*any* . . . justification and other *documentation* used to arrive at the nonresponsibility determination.'" (citing 48 C.F.R. § 19.602-1(c)(2)(vi) (emphasis in original))).  However, plaintiff has not demonstrated why it interpreted the ProjNet-bid inquires as a document that was used by the Agency in its responsibility determination, so that it would fall within the gambit of 48 C.F.R. § 19.602-

1(c)(2)(vi).  *See* Pl.'s MJAR at 22–26.  From the record, the Agency's responsibility determination does not seem to consider the ProjNet-bid inquiries at all.  *See* AR 927–28 (Determination of Nonresponsibility of Trade West Construction, Inc.).  Thus, the Court does not find that the Agency erred in its COC referral to SBA.

Additionally, assuming the pre-bid inquiries did have some import toward the responsibility determination, SBA did in fact receive this document.  *See* Pl.'s MJAR at 25 (citing AR 3822–25).  Plaintiff explains its concerns regarding the omission of the ProjNet-bid inquiries, stating that "these logs not only show the materiality of the definitive responsibility criteria, but would also show SBA that *all bidders* were impacted by the special instructions." Pl.'s MJAR at 23 (emphasis in original).  In any event, the fact that the ProjNet-bid inquiries were submitted by Trade West to SBA prior to its final decision should alleviate this concern. *See* AR 3822–25.  Thus, the Court does not find that the Agency acted arbitrary or capriciously, nor did the Agency violate law when it did not include the ProjNet-bid inquiries in its COC referral of Trade West to SBA.

### D.     SBA's COC Decision[4]

Plaintiff argues that SBA violated FAR 9.104-2, the Special Standards of Responsibility regulation, because SBA did not require the Solicitation's special responsibility criteria to apply to all bidders.  *See* Pl.'s MJAR at 29–32.  Plaintiff asserts that the responsibility determination, applicable to the Agency, applies to SBA in its determination.  *See* Pl.'s MJAR at 30–31 (stating that "SBA's determination of responsibility is governed by the same factors listed in FAR [] 9.104-1 that guide the procuring agency's decision" (emphasis omitted) (quoting *Sims v. United States*, 125 Fed. Cl. 119, 134 (2016))).  To be clear, plaintiff asserts that SBA should have been "governed by the *same standards*" that apply to the Agency.  *See* Pl.'s MJAR at 29–30 (emphasis in original).

Defendant responds that plaintiff has not identified a Title 13 regulation which SBA violated.  *See* Def.'s CMJAR at 27.  Defendant further responds that plaintiff is arguing that SBA is bound by the same special responsibility standards that the Agency's CO developed under FAR 9.104-2(a).  *See* Def.'s CMJAR at 27–28.  Defendant argues that "Congress gave the SBA 'conclusive' authority as to whether a small business shall be deemed 'responsible' to perform federal contracts."  Def.'s CMJAR at 28 (citing 15 U.S.C. § 637(b)(7)(C)).  To conclude otherwise, defendant posits, would "eviscerate[] the authority that Congress conferred to the

---

[4] Plaintiff makes an additional argument which the Court need not address.  Plaintiff argues that Trade West used the Certificate of Competency process to change the terms of the Solicitation.  *See* Pl.'s MJAR at 26–27.  Plaintiff argues that Trade West should have protested the special responsibility criteria prior to bid opening or the time set for receipt of initial proposals to be timely—instead of asking the Small Business Administration ("SBA") to "invalidate the special standards *after* bid opening." *See id.* at 26.  This Court, without more, does not interpret Trade West's actions as opposition against specific terms in the Solicitation.  Rather, Trade West seems to agree with SBA and brings forth no disagreement regarding the Solicitation's responsibility criteria.  Therefore, this case does not fall under the gambit of *Blue & Gold Fleet v. United States*.  *See* 492 F. 3d 1308, 1313 (Fed. Cir. 2007) (stating that offerors have "the opportunity to object to the terms of a government solicitation containing a patent error and fail[ure] to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").

SBA to adjudicate the responsibility of small businesses in Federal contracts."  Def.'s CMJAR at 28.

This Court is inclined to agree with defendant.  Plaintiff asserts that SBA violated FAR 9.104-2, but plaintiff does not provide adequate support on the applicability of this regulation to SBA's COC determination.  Plaintiff cites to *Sims v. United States*, where this Court demonstrated that SBA's determination of responsibility is governed by factors listed under FAR 9.104-1.  125 Fed. Cl. 119, 134 (2016) (citing *CSE Constr. Co. v. United States*, 58 Fed. Cl. 230, 250 (2003)).  However, *Sims* spoke on the applicability of *general standards* of responsibility under FAR 9.104-1, which a prospective contractor must meet to be determined responsible—not *special standards* of responsibility under FAR 9.104-2.  *See id*.  A related case, *CSE Constr. Co. v. United States*, demonstrated a similar notion regarding the general standards of responsibility: "the responsibility criteria set out in FAR 9.104-1 are to be utilized by both procuring agencies and the SBA."  58 Fed. Cl. at 250 (citing *C & G Excavating, Inc. v. United States*, 32 Fed. Cl. 231, 240 n.7 (1994)).  While these cases provide support regarding *general standards* of responsibility, this Court distinguishes general standards of responsibility under FAR 9.104-1 with the special standards of responsibility under FAR 9.104-2.

Additionally, this Court finds the applicability of FAR 9.104-2 to SBA's COC determination as being contrary to congressional intent.  Title 13 confers responsibility of small businesses to SBA, going so far as to give SBA "conclusive" authority as to responsibility determinations.  *See* 15 U.S.C. § 637(b)(7)(C).  What plaintiff proposes is in effect a dilution of SBA's COC authority, which is contrary to the 1977 amendments to the Small Business Act.  *See* H.R. Rep. No. 95-535 (1977) (Conf. Rep.), *as reprinted in* 1977 U.S.C.C.A.N. 843, 851; *see also CSE Constr. Co.*, 58 Fed. Cl. at 251 (stating that the House Conference Report, under "House Bill [1977 H.R. 692] authorizes the SBA to make all determinations regarding the responsibility of a small business concern to perform a specific Government contract.").  While general criteria under FAR 9.104-1, used by all procurement officers, applies to SBA, this Court has not found support—congressional or otherwise—that SBA is bound by the special standards of responsibility developed by COs for certain acquisitions.  Without more, this Court does not find that SBA acted arbitrarily, capaciously, or that it violated law in its COC determination.

## E.   Prejudice and Injunctive Relief

Plaintiff alleges that it was prejudiced "individually and cumulatively" by the Agency and SBA's errors in the procurement process.  *See* Pl.'s MJAR at 32–33.  Plaintiff argues that without these errors, the Agency would have rejected Trade West's bid as nonresponsive and plaintiff would have been the awardee.  *See id.*  Further, plaintiff argues in support of injunctive relief.  Pl.'s Resp. at 24–26.  In response, defendant and defendant-intervenor argue that plaintiff has not demonstrated that it was prejudiced, and plaintiff is not entitled to permanent injunctive relief because plaintiff raised this issue for the first time in its Reply brief.  *See* Def.'s CMJAR at 23, 30 (referring to Pl.'s Resp. at 24–26) (citing *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *see also* Def.-Int.'s CMJAR at 22–23 (citing the same).

As the Court is not persuaded by plaintiff's arguments that the Agency and SBA committed any error in the procurement process, the Court does not believe that plaintiff was

prejudiced by such alleged procurement flaws.  Additionally, regardless of the timing of plaintiff's request for permanent injunctive relief, plaintiff has not demonstrated that it succeeds on the merits of this case for the reasons stated above.  *See PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004) (In analyzing whether a permanent injunction is proper, a court must analyze "whether, as it must, the plaintiff has succeeded on the merits of the case.").  As plaintiff does not succeed on the merits of its case, plaintiff is not entitled to injunctive relief.

## IV.    Conclusion

For the reasons set forth above, plaintiff's Motion for Judgment on the Administrative Record is hereby **DENIED**.  Defendant's Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record is hereby **GRANTED**.  Defendant-intervenor's Cross-Motion for Judgment on the Administrative Record is hereby **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion, with each side to bear its own costs.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith
Senior Judge